STATE OF NORTH CAROLINA v. JOSEPH LAMAR STOKLEY

No. COA06-1222

(Filed 3 July 2007)

## 1. Search and Seizure— search warrant—probable cause

There was probable cause to support a search warrant that was based on the activities of a confidential informant where defendant did not challenge the factual accuracy of the statements in the affidavit, and the affidavit was easily sufficient to establish probable cause for issuance of a warrant to search defendant's house for narcotics.

## 2. Evidence— identity of confidential informant—pretrial motion to disclose-showing of need not met

The trial court did not err by denying defendant's pretrial motion to identify a confidential informant where defendant was charged with possession offenses, not with selling drugs to the confidential informant, and the evidence was uncontradicted that the confidential informant's only role was to make a controlled buy as part of the initial police investigation.

## 3. Evidence— identity of confidential informant—trial testimony—pretrial motion to disclose not renewed

The trial court did not err by denying defendant's motion to reveal the identity of a confidential informant based on trial testimony and the argument that the informant could have offered testimony helpful to his defense. Defendant failed to renew his pretrial motion for disclosure of the confidential informant's identity and never asked the trial court to reconsider its pretrial ruling in light of the trial evidence.

STATE v. STOKLEY

[184 N.C. App. 336 (2007)]

Appeal by defendant from judgments entered 11 January 2006 by Judge W. Russell Duke, Jr., in Pasquotank County Superior Court. Heard in the Court of Appeals 12 April 2007.

*Attorney General Roy Cooper, by Robert T. Hargett, Special Deputy Attorney General, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Charles K. McCotter, Jr., for defendant-appellant.*

LEVINSON, Judge.

Joseph Lamar Stokley (defendant) was tried by a jury beginning 6 January 2006, on charges of trafficking in cocaine by possession, possession with intent to sell and deliver cocaine, and intentionally maintaining a dwelling for keeping and selling controlled substances. He was found guilty as charged, and now appeals from judgments entered upon his convictions. We find no error.

The State's trial evidence tended to show, in pertinent part, the following: Sergeant Gary Bray of the Elizabeth City Police Department testified that in 2005 he was in charge of the city's drug investigation unit. In May 2005 he received complaints about an excessive amount of foot traffic on Glade Street in Elizabeth City. When Sgt. Bray noticed a lot of traffic around the house at 112 Glade Street, he investigated and learned that defendant lived there and that the utility bills were in his name. On 10 May 2005 Sgt. Bray opened an investigation into possible drug sales at 112 Glade Street. He used a confidential informant (CI) to make a controlled purchase of a small amount of cocaine from defendant. After the controlled buy, Sgt. Bray began surveillance of 112 Glade Street. He testified that on at least ten different occasions he watched the residence from a hidden location, and that on "all occasions I would see Mr. Stokley" at home, usually on the front porch of the house. Sgt. Bray observed "a ton of foot traffic," including ten to twelve "individuals that [he] previously knew from arrests for narcotics violations." He also saw defendant engaging in at least five "hand-to-hand transactions" wherein a person would approach defendant's house but stay just long enough for a brief conversation and the exchange of items between the two.

On 20 May 2005 Sgt. Bray applied for and was issued a search warrant for defendant's house. He executed the search warrant that evening, with the assistance of Elizabeth City Police Department's SWAT team. Members of the SWAT team entered the house first "to secure the residence." Thereafter, Sgt. Bray went inside to search for

drugs. When Sgt. Bray entered defendant's house, he saw three other people inside in addition to defendant: a man named Gerald Patterson, known to Sgt. Bray as a drug user; and a teenage girl and a younger boy. The younger people and Patterson were escorted outside. The defendant was "in the kitchen area" when Sgt. Bray went inside. After identifying himself and explaining to defendant why he was there, Sgt. Bray and the other officers conducted a "detailed search of the residence." In the living room they found marijuana and a crack pipe under the sofa. Patterson admitted that the pipe was his. There was a bag of marijuana on the kitchen counter and a set of scales in the pantry. On top of the refrigerator they found what was later determined to be 5.6 grams of cocaine in a child's plastic Easter egg, and another 28.2 grams of cocaine in a bag under a cheerleading pompom.

Currituck County Deputy Randy Jones testified that in May 2005 he was commander of the Elizabeth City Police Department's SWAT team, and had taken part in the search of defendant's house. His testimony generally corroborated that of Sgt. Bray regarding the individuals in the house when the search warrant was executed, their locations in the house, Patterson's reputation as a drug user, and the drugs found in the house. When Jones entered the house the defendant was in the kitchen doorway, and the refrigerator was within arm's reach.

Defendant's evidence, as pertinent to the issues on appeal, is summarized as follows: The defendant testified that he lived at 112 Glade Street, that he was the only adult living there, and that he was at home on the afternoon of 20 May 2005. After socializing with friends in the back yard, defendant came inside and went upstairs to take a shower and change clothes. While he was upstairs, Gerald Patterson began shouting to him that an individual named Luke Stallings had come into the house. Defendant knew Gerald Patterson, his first cousin, as both a drug user and drug dealer. When defendant came downstairs, he saw law enforcement officers entering the house. He denied selling drugs or knowing that drugs were in the house.

On cross-examination, defendant testified that he had seen Gerald Patterson in possession of drugs, and that he had given Patterson money to buy him a bag of marijuana. He admitted to previous convictions for possession with intent to sell cocaine and taking indecent liberties with a minor. He had ten to fifteen adult visitors a day, but denied selling drugs to anyone.

**STATE v. STOKLEY**

[184 N.C. App. 336 (2007)]

The jury found defendant guilty of the charged offenses, and the trial court sentenced defendant to consecutive prison terms of thirty-five to forty-two months for trafficking in cocaine by possession; ten to twelve months for possession with intent to sell and deliver cocaine, and 120 days for the misdemeanor of maintaining a dwelling for keeping and selling controlled substances. From these judgments defendant appeals.

---

[1] Defendant argues first that the trial court erred by denying his motion to suppress evidence seized pursuant to the search warrant obtained by Agent Bray. Defendant contends that the search warrant was not supported by probable cause, in violation of his rights under the U.S. and N.C. Constitutions. We disagree.

Agent Bray applied for a search warrant on 20 May 2005. In support of his application, Gray gave a sworn statement as follows:

On 5/10/2005, Agent Gary Bray, hereafter referred to as Affiant, met with a reliable and confidential informant, hereafter referred to as CI, regardless of race or sex. CI stated that CI had bought crack cocaine from Joseph Stokley at 112 Glade Street. CI stated that CI had bought crack cocaine from Joseph Stokley on several occasions in the last few months. CI stated that CI would go to the residence at 112 Glade Street and ask for a "Twenty" and that Joseph Stokley would give CI a piece of crack cocaine for $20.00 in US Currency. CI stated that sometimes Joseph Stokley would have the crack cocaine on him and that sometimes Joseph Stokley would have to go back into the residence and bring it out.

Within the last 3 days, Affiant supplied CI with funds to purchase crack cocaine from Joseph Stokley at 112 Glade Street. CI was searched and found to have no contraband. Affiant observed CI go to 112 Glade Street and enter the residence. A few minutes later, Affiant observed CI leave the residence and then met with CI. CI turned over to Affiant a piece of off white rock like substance, which tested positive for cocaine. CI was searched and found to have no contraband. CI stated that CI went to 112 Glade Street and knocked on the door and Joseph Stokley came to the door. CI stated that CI went into the living room area and asked for a "Twenty". CI stated that Joseph Stokley pulled a piece of off white rock like substance from his pants pocket and handed the object to the CI. CI stated that CI then gave Joseph Stokley $20.00

US Currency and then left the residence. Affiant maintained visual contact with CI until CI met with Affiant.

Affiant checked the Tax records and found the residence to be owned by Joseph Stokley. A check of the Elizabeth Public Utilities found the electricity to be in the name of Joseph Stokley.

Affiant conducted surveillance on the residence at least 5 times in the last 10 days. Affiant witnessed a large amount of foot traffic entering the residence and leaving after a short period of time. Affiant also observed a black male that Affiant identified as Joseph Stokley sitting on the porch of 112 Glade Street make several hand to hand transactions that Affiant believes to be illegal narcotic sales.

Affiant has known CI for 6 months and has always known CI to be truthful and reliable. CI has given Affiant [information] that has led to the arrests of at least 30 persons for controlled substance violations. CI is familiar with crack cocaine and how it is used and purchased.

Affiant has been employed with the Elizabeth City Police Department for 5 years and has been involved with over 15 drug operations that have led to the arrest of at least 100 persons for controlled substance violations. Affiant has at least 250 hours of training in drug identificatio[n]/investigation from the North Carolina Justice Academy and Wilson Technical Institute.

Defendant does not challenge the factual accuracy of the statements in the affidavit, and supports his contention that the search warrant was not based on probable cause with the conclusory statement that the "failure of the affidavit to establish reasonable grounds to believe that the crime was occurring on the premises to be searched invalidates the warrant issued thereon." We disagree.

"Probable cause to search exists if a person of ordinary caution would be justified in believing that what is sought will be found in the place to be searched. . . . [A]ppellate court review of a magistrate's probable cause decision . . . is limited to whether 'the evidence as a whole provided a substantial basis for a finding of probable cause[.]' " *State v. Barnhardt*, 92 N.C. App. 94, 96, 97, 373 S.E.2d 461, 462 (1988) (quoting *State v. Arrington*, 311 N.C. 633, 640, 319 S.E.2d 254, 258 (1984)).

In the instant case, the affidavit states that: (1) a CI had bought cocaine from defendant, at defendant's house, several times; (2) Gray

knew and trusted the CI, who had provided reliable information in the past; (3) after meeting with Gray, the CI made a controlled buy of cocaine from defendant, at defendant's house; and (4) during Gray's surveillance of defendant's house, he saw many people visiting the house for a short time and witnessed several hand-to-hand transactions between defendant and visitors to his house. We easily conclude that this affidavit is sufficient to establish probable cause for the issuance of a search warrant. This assignment of error is overruled.

[2] Defendant argues next that the trial court erred by denying his motion seeking the identity of the CI. We disagree.

A criminal defendant's right to disclosure of the identity of a confidential informant is addressed in N.C. Gen. Stat. § 15A-978 (2005), which states in pertinent part that:

(b) In any proceeding on a motion to suppress evidence pursuant to this section in which the truthfulness of the testimony presented to establish probable cause is contested and the testimony includes a report of information furnished by an informant whose identity is not disclosed in the testimony, the defendant is entitled to be informed of the informant's identity unless:

(1) The evidence sought to be suppressed was seized by authority of a search warrant[.] . . . The provisions of subdivisions (b)(1) and (b)(2) do not apply to situations in which disclosure of an informant's identity is required by controlling constitutional decisions.

G.S. § 15A-978(b).

"In *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, (1957), the United States Supreme Court held it was error not to order the Government to reveal the name of an informant when it was alleged that the informant actually took part in the drug transaction for which the defendant was being tried. The Supreme Court recognized the State has the right to withhold the identity of persons who furnish information to law enforcement officers, but said this privilege is limited by the fundamental requirements of fairness." *State v. Leazer*, 337 N.C. 454, 459, 446 S.E.2d 54, 57 (1994). *Roviaro* held that "no fixed rule with respect to disclosure is justifiable. . . . Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime

charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646.

"The privilege of nondisclosure, however, ordinarily applies where the informant is neither a participant in the offense, nor helps arrange its commission, but is a mere tipster who only supplies a lead to law enforcement officers." *State v. Grainger*, 60 N.C. App. 188, 190, 298 S.E.2d 203, 204 (1982) (citations omitted). Moreover, "[b]efore the courts should even begin the balancing of competing interests which *Roviaro* envisions, a defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure." *State v. Watson*, 303 N.C. 533, 537, 279 S.E.2d 580, 582 (1981). This Court has held:

> Upon a motion by defendant that the identity of a confidential informant be revealed, the trial court should first hold a hearing outside the presence of the jury to consider the question. Defendant must present evidence supporting the necessity of having the identity of the confidential informant revealed, following which the State may present evidence in opposition to defendant's motion. Upon reviewing the evidence and arguments by defendant and the State, the trial court may then either grant or deny defendant's motion, making the necessary findings of fact and conclusions of law in support of its decision.

*State v. Moctezuma*, 141 N.C. App. 90, 97, 539 S.E.2d 52, 57 (2000).

In the instant case, defendant was charged with possession offenses, and not with selling drugs to the CI, as was the case in *Roviaro*. The evidence was uncontradicted that the CI's only role was to make a controlled buy of cocaine as part of the initial police investigation into drug sales at defendant's address. The controlled buy took place several days before the issuance of the search warrant, and no evidence was presented suggesting that the CI was present when the police searched defendant's house. At the pretrial hearing on defendant's motion for disclosure of the CI's identity, defendant asserted that there were reasonable grounds to believe that the CI was an "accomplice" to the charged offenses. However, defendant presented no evidence in support of this allegation. On this record, we conclude that defendant failed to meet his burden of showing a need for the CI's identity and that the trial court did not err by denying defendant's pretrial motion.

**[3]** On appeal, defendant argues that the CI could have offered testimony helpful to his defense; citing his own testimony that he didn't know drugs were in his house and that several people had access to his house. Defendant contends that the CI might have testified that it was not defendant who sold him drugs during the controlled buy.

Such testimony would have contradicted Sgt. Bray's testimony that the CI said he bought drugs from defendant. Defendant neither objected to the introduction of the officer's testimony about the controlled buy or any of the statements made to him by the CI, nor asked for an instruction limiting the jury's consideration of the statements by the CI. All of the evidence related to the controlled buy, then, could have helped the State establish that defendant had knowledge of contraband inside the residence. *See State v. Dyson,* 165 N.C. App. 648, 652, 599 S.E.2d 73, 76 (2004) ("[W]hen admitted without objection, otherwise inadmissible hearsay may be considered with all the other evidence and given such evidentiary value as it may possess."); *see also State v. Featherson,* 145 N.C. App. 134, 137, 548 S.E.2d 828, 831 (2001) (prior inconsistent statements admitted without objection properly considered substantive evidence).

Here, defendant failed to renew his pretrial motion for disclosure of the CI's identity, and never asked the trial court to reconsider its pretrial ruling in light of the trial evidence. At the time of the pretrial motion to compel disclosure of the CI, the trial court was presented with a forecast of evidence that did not include the possibility that hearsay statements made by the CI might be probative of any material fact associated with the offenses for which he stood accused. This assignment of error is overruled.

We have considered defendant's remaining arguments on appeal and conclude that they are without merit. We further conclude that defendant had a fair trial, free of prejudicial error.

No error.

Judges BRYANT and STEELMAN concur.