IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-370

 Filed: 17 April 2018

Wake County, No. 15CRS208027

STATE OF NORTH CAROLINA

 v.

KURT DEION FREDERICK, Defendant.

 Appeal by defendant from an order entered 7 June 2016 by Judge W. Osmond

Smith III in Wake County Superior Court. Heard in the Court of Appeals 5 October

2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General J. Aldean
 Webster III, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S.
 Hitchcock, for defendant-appellant.

 BERGER, Judge.

 On June 8, 2016, a Wake County jury found Kurt Deion Frederick

(“Defendant”) guilty of trafficking heroin, maintaining a dwelling used for keeping or

selling heroin, and possession with intent to sell or deliver a Schedule I controlled

substance. Prior to trial, Defendant moved to suppress evidence obtained pursuant

to a search of his residence. Defendant appeals from the order denying his motion to

suppress, contending that the search warrant was improperly issued because it

lacked probable cause. We disagree.
 STATE V. FREDERICK

 Opinion of the Court

 Factual and Procedural Background

 On April 8, 2015, Detective J. Ladd with the Raleigh Police Department

applied for a warrant to search the premises of 3988 Neeley Street in Raleigh for

heroin, firearms, drug transaction records, and cash. The residence belonged to

Defendant.

 Detective Ladd attached a sworn affidavit to the search warrant which

testified to his more than thirteen years of law enforcement experience, his work with

Raleigh’s drug and vice unit, and his specific drug interdiction training. The affidavit

also set forth the following facts:

 Over the last sixty days, I received information from
 a confidential source regarding a mid-level MDMA,
 heroin[,] and crystal methamphetamine dealer in the
 Raleigh, NC area. This source has always been trustworthy
 and truthful with [d]etectives[,] and I consider his/her
 information reliable. This confidential source is familiar
 with MDMA, heroin[,] and crystal methamphetamine and
 the way it is packaged and sold. This confidential source
 has always provided [d]etectives with information in the
 past concerning other criminal drug investigations that I
 have been able to corroborate and determined to be truthful.

 Within the last week, this confidential source was
 used to arrange a controlled purchase of a quantity of
 “Molly” (MDMA) from 3988 Neeley St[.] Raleigh, NC
 27606. The confidential source met with [d]etectives prior
 to making the controlled purchase of “Molly”. The
 confidential source and his/her vehicle were searched for
 any illegal contraband. There was none located. The
 confidential source was provided with a sum of money from
 the Raleigh Police Department’s informant funds. The
 confidential source arranged to meet a middle man prior to

 -2-
 STATE V. FREDERICK

 Opinion of the Court

going to 3988 Neeley St[.] Raleigh, NC 27606. Detectives[]
maintained constant surveillance on the confidential
source while traveling to meet the middle man. Once the
source met with the middle man, they traveled to 3988
Neeley St[.] Raleigh, NC 27606. The middle man was
observed entering 3988 Neeley St[.] Raleigh, NC 27606 and
returning to the source approximately two minutes later.
Based on my training and experience, this was indicative of
drug trafficking activity. The source met with me at a pre-
determined meet location after the middle man was
returned to his residence. The source provided me with a
quantity of “Molly”. The source and his/her vehicle were
searched again for any illegal contraband. There was none
located.

 Within the last 72 hours, the confidential source was
used to arrange a controlled purchase of heroin [from] 3988
Neeley St[.] Raleigh, NC 27606. The confidential source
met with [d]etectives prior to making the controlled
purchase of heroin. The confidential source and his/her
vehicle were searched for any illegal contraband. There
was none located. The confidential source was provided
with a sum of money from the Raleigh Police Department’s
informant funds. The confidential source arranged to meet
a middle man prior to going to 3988 Neeley St[.] Raleigh,
NC 27606. Detectives[] maintained constant surveillance
on the confidential source while traveling to meet the
middle man. Once the source met with the middle man,
they traveled to 3988 Neeley St[.] Raleigh, NC 27606. The
middle man was observed entering 3988 Neeley St[.]
Raleigh, NC 27606 and returning to the source
approximately three minutes later. Based on my training
and experience, this was indicative of drug trafficking
activity. The source met with me at a pre-determined meet
location after the middle man was returned to his
residence. The source provided me with a quantity of
heroin. The source and his/her vehicle was searched again
for any illegal contraband. There was none located. A small
sample of the heroin field tested positive for heroin.

 -3-
 STATE V. FREDERICK

 Opinion of the Court

 While conducting surveillance during the controlled
 buy of heroin, two males were observed entering 3988 Neeley
 St[.] Raleigh, NC 27606. The two individuals exited 3988
 Neeley St[.] Raleigh, NC 27606 approximately two minutes
 later and returned to their vehicle. Based on my training
 and experience, this was indicative of drug trafficking
 activity.

(Emphasis added).

 This search warrant was granted by a magistrate, and officers executed it at

the residence. More than 4.0 grams of heroin, 3.4 grams of MDMA, drug packaging

materials, and $600.00 in cash were discovered in the residence. Officers observed

Defendant leaving his residence with a Crown Royal bag, and detained him a short

time later in his vehicle. Officers found heroin packaged for sale and more than

$2,500.00 in cash in the Crown Royal bag located in the vehicle.

 Defendant was arrested and charged with trafficking heroin, maintaining a

dwelling for keeping or selling controlled substances, and possession of MDMA. The

Wake County Grand Jury indicted Defendant on June 1, 2015 for trafficking in heroin

by possession, maintaining a dwelling for keeping or selling controlled substances,

and possession with intent to sell or deliver a Schedule I controlled substance.

 Defendant filed a motion to suppress evidence obtained from the searches prior

to trial in Wake County Superior Court. In his motion, Defendant conceded that

during the first transaction, the middleman “entered the residence and

approximately three minutes later came out with what appeared to be a Molly.” For

 -4-
 STATE V. FREDERICK

 Opinion of the Court

the second transaction, Defendant conceded that the middleman “entered the

residence and returned in approximately three minutes with what appeared to be

heroin.” Defendant presented no evidence to support his motion, simply arguing the

search warrant was facially insufficient. The trial court denied Defendant’s motion,

finding there was no conflict in the information provided in Detective Ladd’s

application for the search warrant, and the affidavit was sufficient to establish

probable cause and justify issuance of the search warrant by the magistrate.

 Defendant was convicted of trafficking in heroin by possession, maintaining a

dwelling for keeping or selling controlled substances, and possession with intent to

sell or deliver a Schedule I controlled substance. He was sentenced to a term of

seventy to ninety-three months in prison. It is from the order denying his motion to

suppress that Defendant timely appeals.

 Standard of Review

 “[A] reviewing court is responsible for ensuring that the issuing magistrate had

a substantial basis for concluding that probable cause existed.” State v. McKinney,

368 N.C. 161, 165, 775 S.E.2d 821, 825 (2015) (citation, quotation marks, brackets,

and ellipses omitted). Our Supreme Court has stated, “[t]he applicable test is

whether, given all the circumstances set forth in the affidavit before the magistrate,

. . . there is a fair probability that contraband . . . will be found in a particular place.”

 -5-
 STATE V. FREDERICK

 Opinion of the Court

State v. Riggs, 328 N.C. 213, 218, 400 S.E.2d 429, 432 (1991) (citation and brackets

omitted).

 Analysis

 The right of the people to be secure in their persons,
 houses, papers, and effects, against unreasonable searches
 and seizures, shall not be violated, and no warrants shall
 issue but upon probable cause, supported by oath or
 affirmation and particularly describing the place to be
 searched and the persons or things to be seized.

U.S. Const. amend. IV. “Article I, Section 20 of the Constitution of North Carolina

likewise prohibits unreasonable searches and seizures and requires that warrants be

issued only on probable cause.” State v. Allman, 369 N.C. 292, 293, 794 S.E.2d 301,

303 (2016). “Probable cause . . . means a reasonable ground to believe that the

proposed search will reveal the presence upon the premises to be searched of the

objects sought and that those objects will aid in the apprehension or conviction of the

offender.” State v. Campbell, 282 N.C. 125, 128-29, 191 S.E.2d 752, 755 (1972)

(citation omitted).

 The quantum of proof required to establish probable cause is different than

that required to establish guilt. Draper v. United States, 358 U.S. 307, 311-12, 3 L.

Ed. 2d 327, 331 (1959). “Probable cause requires not certainty, but only a probability

or substantial chance of criminal activity.” McKinney, 368 N.C. at 165, 775 S.E.2d at

825 (emphasis in original) (citation and quotation marks omitted). “[The] standard

for determining probable cause is flexible, permitting the magistrate to draw

 -6-
 STATE V. FREDERICK

 Opinion of the Court

‘reasonable inferences’ from the evidence . . . .” Id. at 164, 775 S.E.2d at 824-25

(citation omitted).

 To determine if probable cause exists, we look at the totality of the

circumstances known to the magistrate at the time the search warrant was issued.

State v. Arrington, 311 N.C. 633, 638, 643, 319 S.E.2d 254, 257, 261 (1984); see Illinois

v. Gates, 462 U.S. 213, 76 L. Ed. 2d 527, reh'g denied, 463 U.S. 1237, 77 L. Ed. 2d

1453 (1983). This test asks “whether the evidence as a whole provides a substantial

basis for concluding that probable cause exists.” State v. Williams, 319 N.C. 73, 81,

352 S.E.2d 428, 434 (1987). In applying this test, “great deference should be paid a

magistrate's determination of probable cause and . . . after-the-fact scrutiny should

not take the form of a de novo review.” Arrington, 311 N.C. at 638, 319 S.E.2d at 258.

 As stated above, an affidavit is sufficient to establish probable cause “if it

supplies reasonable cause to believe that the proposed search for evidence probably

will reveal the presence upon the described premises of the items sought and that

those items will aid in the apprehension or conviction of the offender.” Id. at 636, 319

S.E.2d at 256 (emphasis added) (citation omitted). Our Supreme Court noted that

federal courts have found “direct evidence linking the crime to the location to be

searched is not required to support a search warrant . . . .” Allman, 369 N.C. at 297,

794 S.E.2d at 305.

 -7-
 STATE V. FREDERICK

 Opinion of the Court

 In State v. Riggs, the search warrant application provided that law

enforcement officers obtained information from a confidential informant that the

defendant was selling marijuana. Riggs, 328 N.C. at 214, 400 S.E.2d at 430. Officers

used two different confidential informants to set up two drug transactions with the

defendant. Id. at 214-15, 400 S.E.2d at 430. Prior to meeting a middleman, officers

searched the confidential informant and his vehicle, provided him with money to

purchase drugs, and equipped him with a recording device. Id. at 214, 400 S.E.2d at

430. The confidential informant met the middleman, and the two went to defendant’s

residence, where the middleman purchased drugs from defendant. Id. at 215, 400

S.E.2d at 431. A similar transaction with a separate confidential source was

undertaken approximately one month prior. Id. at 215, 400 S.E.2d at 430. Our

Supreme Court upheld the magistrate’s determination of probable cause, stating:

 Where, as here, information before a magistrate indicates
 that suspects are operating, in essence, a short-order
 marijuana drive-through on their premises, the logical
 inference is that a cache of marijuana is located somewhere
 on those premises; that inference, in turn, establishes
 probable cause for a warrant to search the premises,
 including the residence.

Id. at 221, 400 S.E.2d at 434.

 The only practical difference between Riggs and the case sub judice was the

use of a recording device by the confidential informant. However, the Riggs Court

focused its discussion of probable cause, not on the communication between the

 -8-
 STATE V. FREDERICK

 Opinion of the Court

middleman and the confidential source, but rather on the officers’ experience, the

conduct of the middleman, and the reasonable inferences drawn from the officers’

observations. Id. at 219-21, 400 S.E.2d at 433-34.

 Here, Detective Ladd received information from a reliable confidential source

regarding a mid-level drug dealer who sold MDMA, heroin, and crystal

methamphetamine. The confidential source had previously provided truthful

information that Detective Ladd could corroborate, and the confidential source was

familiar with the packaging and sale of MDMA, heroin, and crystal

methamphetamine.

 The same confidential source had assisted Detective Ladd with the purchase

of MDMA one week prior to issuance of the search warrant. At the time of that

purchase, Detective Ladd provided the confidential source with money to purchase

MDMA, and he searched the confidential source and his vehicle prior to any

interaction with the middleman. The confidential source met the middleman prior to

going to Defendant’s residence, and “[d]etectives[] maintained constant surveillance

on the confidential source while traveling to meet the middle man.” The confidential

source and the middleman then traveled to Defendant’s residence. Detectives

observed the middleman enter Defendant’s residence and return to the confidential

source after approximately two minutes in Defendant’s house. Detective Ladd swore

in his affidavit that this conduct “was indicative of drug trafficking activity” based on

 -9-
 STATE V. FREDERICK

 Opinion of the Court

his training and experience. The middleman returned to his residence, and the

confidential source met Detective Ladd. The confidential source provided him with

MDMA, and no other contraband was found on the confidential source or in his

vehicle.

 A subsequent purchase of heroin took place seventy-two hours prior to issuance

of the search warrant. The details of that drug transaction are nearly identical to

those set forth above, except the middleman was in Defendant’s residence for

approximately three minutes. Further, while observing the second transaction,

Detective Ladd saw two males enter Defendant’s residence and exit approximately

two minutes later. Detective Ladd again indicated that the conduct he observed on

this occasion was “indicative of drug trafficking activity” based on his training and

experience.

 On two occasions, Detective Ladd personally observed his confidential source

meet the middleman and travel to Defendant’s residence, where the middleman

entered and exited shortly thereafter. The confidential source, who had been

searched and supplied with money to purchase controlled substances, provided

Detective Ladd with MDMA and heroin after his interaction with the middleman.

Detective Ladd also observed other traffic in and out of Defendant’s residence.

Detective Ladd’s experience and personal observations set forth in the affidavit were

 - 10 -
 STATE V. FREDERICK

 Opinion of the Court

sufficient to establish probable cause to believe that controlled substances would

probably be found in Defendant’s residence.

 Based on Detective Ladd’s training and experience, the conduct of the

middleman, and Detective Ladd’s personal observations, the magistrate here could

reasonably infer that the middleman obtained MDMA and heroin from Defendant’s

residence. Further, the magistrate could reasonably infer that there would probably

be additional controlled substances at that location. Moreover, the magistrate could

reasonably infer that the middleman did not have the MDMA or heroin in his

possession when he met the confidential source, and his purpose in traveling to

Defendant’s residence was to obtain the controlled substance the confidential source

supplied to Detective Ladd. Based on the totality of the circumstances, the

magistrate had a substantial basis for concluding probable cause existed to believe

controlled substances were located on the premises of 3988 Neeley Street in Raleigh.

 Conclusion

 As our Supreme Court has stated, “[t]he resolution of doubtful or marginal

cases in this area should be largely determined by the preference to be accorded to

warrants.” Riggs, 328 N.C. at 222, 400 S.E.2d at 435 (emphasis added) (citations and

quotation marks omitted). That reasonable minds could disagree, as shown by the

dissent, demonstrates that this may be a marginal case. As such, the magistrate’s

 - 11 -
 STATE V. FREDERICK

 Opinion of the Court

probable cause determination is upheld and the trial court’s denial of Defendant’s

motion to suppress is affirmed.

 AFFIRMED.

 Judge DAVIS concurs.

 Judge ZACHARY dissents with separate opinion.

 - 12 -
 No. COA17-370 – State v. Frederick

 ZACHARY, Judge, dissenting

 The Fourth Amendment functions at its core to prohibit the government from

subjecting its citizens to unreasonable searches and seizures. The existence of a

warrant supported by probable cause protects this right, but only if it is inherently

dependable. E.g., Brinegar v. United States, 338 U.S. 160, 175, 93 L. Ed. 1879, 1890

(1949). Because of the lack of information concerning the reliability of the unknown

middleman, the lack of detail regarding the controlled purchases, and the lack of

independently corroborated facts contained in the affidavit, probable cause to search

defendant’s home was not established, and I respectfully dissent.

 I.

 The majority quotes State v. Riggs and insists that our inquiry today is limited

to determining “whether, given all the circumstances set forth in the affidavit before

the magistrate, . . . there is a fair probability that contraband . . . will be found in a

particular place.” 328 N.C. 213, 218, 400 S.E.2d 429, 432 (1991) (citations and

quotation marks omitted). The full scope of this Court’s review, however, is “whether,

given all the circumstances set forth in the affidavit before the magistrate, including

veracity and basis of knowledge of persons supplying hearsay information, there is a

fair probability that contraband . . . will be found in a particular place.” Riggs, 328

N.C. at 218, 400 S.E.2d at 432 (citations and quotation marks omitted) (emphasis

added). Probable cause to search “exists where ‘the facts and circumstances within .

. . the officers’ knowledge, and of which they had reasonably trustworthy information,
 STATE V. FREDERICK

 ZACHARY, J., dissenting

are sufficient in themselves to warrant a man of reasonable caution in the belief that’

an offense has been or is being committed.” Brinegar, 338 U.S. at 175-76, 93 L. Ed.

at 1890 (quoting Carroll v. United States, 267 U.S. 132, 162, 69 L. Ed. 543, 555 (1925))

(alterations omitted). The requirement that an inquiry be conducted into the

“veracity and basis of knowledge of persons supplying hearsay information” provides

the degree of reliability necessary to protect the security of citizens in their homes

from the unwarranted intrusion of the government long contemplated by the

Constitution. This is the basis of my dissent.

 II.

 In the instant case, the only information contained in the affidavit supporting

the application for search warrant that ties this defendant’s home to the sale of

narcotics was the hearsay information related to the two controlled purchases. An

unidentified “middleman” conducted the controlled purchases rather than the

confidential informant, and no basis was provided which would justify reliance on the

middleman. Nevertheless, in holding that the magistrate had a substantial basis for

concluding that probable cause existed, the majority focuses on Detective Ladd’s

experience and his report that:

 [o]n two occasions, Detective Ladd personally observed his
 confidential source meet the middleman and travel to
 Defendant’s residence, where the middleman entered and
 exited shortly thereafter. The confidential source, who had
 been searched and supplied with money to purchase
 controlled substances, provided Detective Ladd with

 -2-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

 MDMA and heroin after his interaction with the
 middleman. Detective Ladd also observed other traffic in
 and out of the residence.

 This statement establishes merely that the unknown middleman entered

defendant’s home, and that the confidential informant provided law enforcement

officers with drugs at some time thereafter. Under this analysis, the focus is on the

drugs that the confidential informant delivered to the officers, which ostensibly were

acquired inside Defendant’s home. Without that connection, there can be no probable

cause.

 III.

 To be sure, the facts provided in an application for a search warrant need not

always have been personally observed or obtained by a law enforcement officer in

order to support a finding of probable cause. Information gleaned from a third-party

may support a finding of probable cause. Jones v. United States, 362 U.S. 257, 269,

4 L. Ed. 2d 697, 707 (1960). In the context of third-party information, however, the

totality of the circumstances test requires that the nature of the third-party

information “be such that a reasonably discreet and prudent person would rely upon

[it.]” State v. Arrington, 311 N.C. 633, 636, 319 S.E.2d 254, 256-57 (1984); see also

Illinois v. Gates, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983); State v. Johnson,

143 N.C. App. 307, 310, 547 S.E.2d 445, 448 (2001). Accordingly, where an officer

applies for a search warrant in reliance upon information that was supplied by a

 -3-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

third-party, probable cause demands an analysis of whether there is “a substantial

basis for crediting the hearsay[.]” Jones, 362 U.S. at 269, 4 L. Ed. 2d at 707; see also

Alabama v. White, 496 U.S. 325, 328, 110 L. Ed. 2d 301, 308 (1990) (“[A]n informant’s

‘veracity,’ ‘reliability,’ and ‘basis of knowledge’ . . . remain ‘highly relevant in

determining the value of [the officer’s] report.’ ”) (quoting Gates, 462 U.S. at 230, 76

L. Ed. 2d at 543); Arrington, 311 N.C. at 643, 319 S.E.2d at 261 (adopting Gates

regarding “the sufficiency of probable cause to support the issuance of a search

warrant”).

 There are various factors relevant to the determination of whether there is a

substantial basis for crediting third-party information. A recurrent consideration is

whether the tip is accompanied by statements in the affidavit establishing that the

informant is a reliable source. See e.g., Riggs, 328 N.C. at 219, 400 S.E.2d at 433.

The affiant’s statement that the informant has provided law enforcement officers

with accurate information in the past is usually sufficient to establish the informant’s

reliability under this standard. E.g., id. at 218, 400 S.E.2d at 432 (“[T]he informant

. . . had made two prior controlled purchases of drugs and also previously had given

accurate information which resulted in the arrest of a ‘narcotics violator.’ Such

evidence established that informant’s reliability.”).

 In contrast, probable cause is more difficult to satisfy under the totality of the

circumstances test where the information supporting an officer’s application for

 -4-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

search warrant was provided by an unverified or an anonymous source. In such a

case, additional indicia of reliability must be present. See Gates, 462 U.S. at 237-38,

244, 76 L. Ed. 2d at 548, 552. A tip that was provided by an anonymous source will

often be unable to satisfy the requisite indicia of reliability without a generous level

of detail, or without essential facts that law enforcement officers were able to

independently corroborate. See e.g., White, 496 U.S. at 329, 110 L. Ed. 2d at 308

(“Some tips, completely lacking in indicia of reliability, would . . . require further

investigation before a [search] would be authorized[.]”) (citation and quotation marks

omitted); State v. Trapp, 110 N.C. App. 584, 588-89, 430 S.E.2d 484, 487-88 (1993).

The extent of the details provided in the tip and the officer’s ability to corroborate the

information will factor considerably into the totality of the circumstances to be

reviewed. Gates, 462 U.S. at 241-42, 245, 76 L. Ed. 2d at 550-51, 552.

 Likewise, where law enforcement officers apply for a search warrant based

upon information gleaned from a controlled purchase that was executed by a third-

party informant, the reliability of the controlled purchase itself must be analyzed in

order to determine whether it was sufficient to support a finding of probable cause.

Relevant indicia of reliability often include statements in the affidavit that either: (1)

the source was reliable; (2) the source was searched for drugs immediately before and

after the controlled purchase; (3) the source wore a hidden video or audio surveillance

device during the controlled purchase; or (4) law enforcement officers observed the

 -5-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

source engaging in the hand-to-hand sale with the defendant. See e.g., Riggs, 328

N.C. at 214-16, 400 S.E.2d at 430-31; State v. Stokley, 184 N.C. App. 336, 341, 646

S.E.2d 640, 644 (2007). Where such protective measures are taken, this Court has

generally held that information obtained from a controlled purchase was sufficiently

reliable under the totality of the circumstances to support the issuance of a search

warrant. See e.g., Stokley, 184 N.C. App. at 341, 646 S.E.2d at 644; Johnson, 143

N.C. App. at 311, 547 S.E.2d at 448; Cf. State v. Collins, 216 N.C. App. 249, 250, 716

S.E.2d 255, 255-56 (2011). Where such protective measures are circumvented,

however, the courts become more concerned with the satisfaction of the constitutional

requisites for issuance of a search warrant.

 The reliability of a controlled purchase must be particularly scrutinized by

magistrates where the reliability of the source of the operation cannot be shown. In

such a case, a greater level of detail or independent corroboration must be present in

order for the operation to support a finding of probable cause. See State v. Brody, ___

N.C. App. ___, ___, 796 S.E.2d 384, 388 (2017) (“The difference in evaluating an

anonymous tip as opposed to a reliable, confidential informant’s tip is that the overall

reliability is more difficult to establish, and thus some corroboration of the

information or greater level of detail is generally necessary.”) (citation and quotation

marks omitted) (alteration omitted).

 -6-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

 IV.

 While controlled purchases are often employed as a means to independently

corroborate an anonymous tip, in the instant case, the operations are themselves the

subject of the anonymity. Thus, the pertinent question is whether the controlled

purchases offer sufficient indicia of reliability to support a finding of probable cause

under the totality of the circumstances.

 As the majority notes, the reliability of a narcotics operation that was

conducted by an anonymous or unknown source has been addressed by this Court on

only one prior occasion, in State v. Riggs. A comprehensive analysis of Riggs is

necessary in order to understand its application to the instant case.

 In Riggs, the application for search warrant provided that law enforcement

officers had obtained information from a confidential informant that the defendant

Bobby Riggs was selling narcotics. Riggs, 96 N.C. App. 595, 386 S.E.2d 599 (1989),

rev’d, Riggs, supra. The confidential informant himself was shown to be reliable and,

thus, so too was his tip. In light of that reliable tip, the officers subsequently

conducted a controlled purchase in which the confidential informant arranged for an

unwitting middleman to purchase narcotics from the defendant Bobby Riggs. Riggs,

328 N.C. at 214, 400 S.E.2d at 430. The confidential informant was searched before

and after the operation and was equipped with an audio surveillance device during

his interactions with the middleman. Id. As officers watched, the middleman

 -7-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

traveled by himself to the residence of defendants Bobby and Pamela Riggs and

purchased narcotics from defendant Bobby Riggs outside in the driveway. Id. at 214-

16, 400 S.E.2d at 430-31. The middleman then returned to his home and gave the

narcotics to the confidential informant. Id.

 On appeal from the trial court’s denial of the defendants’ motions to suppress,

this Court concluded, in part, that a controlled purchase conducted outside of the

defendants’ home was insufficient to establish probable cause that narcotics would

be found inside the home. Riggs, 96 N.C. App. at 598, 386 S.E.2d at 601. Our

Supreme Court reversed and concluded that, because the magistrate was simply

required to make a “common sense determination” of whether there was a fair

probability that narcotics would be found in the home, the fact that the defendant

had conducted the sale in the driveway to his home was sufficient to support the

magistrate’s finding of probable cause that narcotics would also be found inside the

home. Riggs, 328 N.C. at 220-21, 400 S.E.2d at 434.

 The majority maintains that “[t]he only practical difference between Riggs and

the case sub judice was the use of a recording device by the confidential informant[.]”

This distinction is, by itself, significant. However, it is also not the “only practical

difference” involved. While the existence of the audio recordings alone certainly could

have been sufficiently corroborative to support a finding of probable cause from the

operation, the officers in Riggs were provided with reliable information tying the

 -8-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

defendants to drug trafficking from the start. Id. at 215, 400 S.E.2d at 430. Thus,

the controlled purchase in Riggs was both corroborated and corroborative. The

combination of these factors provides the underpinning for our Supreme Court’s

determination in Riggs that the information in the affidavit was sufficient to support

the magistrate’s finding of probable cause. The initial suspicions were corroborated

by the tips, the tips were corroborated by the controlled purchase, and the controlled

purchase was corroborated by its own separate indicia of reliability.

 The same cannot be said here. Although the confidential informant’s veracity

was established by his history of reliability with law enforcement, the confidential

informant did not accompany the middleman into defendant’s home. The confidential

informant did not observe the alleged drug transactions taking place, nor is this a

case in which any hand-to-hand transactions were observed by law enforcement

officers. Cf. Stokley, 184 N.C. App. at 340-41, 646 S.E.2d at 644. Further, the

affidavit does not contain information implicating defendant’s home from the outset,

such as, for example, that the confidential informant had claimed to have purchased

narcotics from defendant in the past. Cf. id. The middleman was not searched before

or after the alleged purchases, and the confidential informant was not searched after

he met privately with the middleman before traveling to defendant’s home. The

confidential informant did not wear an audio or video surveillance device during his

interactions with the unknown middleman.

 -9-
 STATE V. FREDERICK

 ZACHARY, J., dissenting

 The existence of any one of these safeguards would have helped to establish

the reliability of the operations. However, no further details concerning the events

inside defendant’s home are provided. Rather, the only corroboration provided in the

affidavit is the fact that the middleman and two other individuals were observed

entering defendant’s residence. This alone is wholly insufficient to establish probable

cause in the instant case. E.g., State v. Ford, 71 N.C. App. 748, 752, 323 S.E.2d 358,

361 (1984); State v. Hunt, 150 N.C. App. 101, 107, 562 S.E.2d 597, 601 (2002). Beyond

the middleman having entered defendant’s home, the affidavit sets forth no basis to

otherwise justify law enforcement officers’ or the magistrate’s reliance on the

assumption that the unknown middleman purchased the narcotics while he was

inside.

 While probable cause may indeed be established where the reliability of the

source of an operation is wanting, such is the case only where the operation itself

furnishes highly detailed information, or where the presumptions gathered from the

operation have been independently corroborated. Gates, 462 U.S. at 234, 76 L. Ed.

2d at 545. The reliability of the operation must be strong enough to compensate for

lack of reliability of the source. Absent any such corroboration or additional detail,

the essence of the affidavit in the case at bar established at most that the unknown

middleman claimed to have purchased the drugs when he was inside defendant’s

 - 10 -
 STATE V. FREDERICK

 ZACHARY, J., dissenting

home. I do not believe that it is constitutionally permissible for the officers or the

magistrate to take an unknown middleman at his word, and I will not do so.

 ***

 I am reluctant to allow an affidavit describing the anonymous purveyance of

narcotics, and otherwise lacking in detail or corroboration, to serve as the primary

justification for an intrusion into a private residence, “the most highly protected of

all places under the Fourth Amendment[.]” Riggs, 328 N.C. at 222, 400 S.E.2d at

435. In upholding the issuance of the search warrant in the instant case, despite the

insufficiency of the initial information leading to the operations and despite the use

of a middleman whose identity and veracity remain a mystery, I fear that the majority

has created a dangerous precedent allowing for the issuance of search warrants upon

a finding of less than probable cause. I would hold that, given the unusual facts of

this case together with the absence of safeguards and indicia of reliability that are

typically present in a controlled purchase, the application for a search warrant was

insufficient to support the magistrate’s finding of probable cause.

 - 11 -